U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2018 JUL 19 AM 10: 51
CLERK
BY_____
DEPUTY CLERK

**U.S. DISTRICT COURT FOR THE
DISTRICT OF VERMONT**

| | |
|---|---|
| **FIREMEN'S INSURANCE COMPANY OF WASHINGTON, D.C.,** | )<br>)<br>) |
| Plaintiff, | )<br>) CIVIL ACTION NO.:<br>) 2018- |
| v. | )<br>) 2:18-cv-115 |
| **KEYMONT CONSTRUCTION, INC. AND THE TOWN OF FAIRLEE, VERMONT** | )<br>)<br>) |
| Defendants. | )<br>) |

## COMPLAINT FOR DECLARATORY RELIEF

### PRELIMINARY STATEMENT

1. This Complaint for Declaratory Relief seeks a determination of the rights and responsibilities of the parties pursuant to a certain contract of insurance issued by the Plaintiff, Firemen's Insurance Company of Washington, D.C. ("Firemen's").

### THE PARTIES

2. The Firemen's Insurance Company of Washington, D.C. is an insurance company incorporated in Delaware with a principal place of business in Glen Allen, Virginia.

3. Keymont Construction, Inc. is a New Hampshire corporation that is headquartered in Laconia, New Hampshire and that does business in Vermont and maintains a place of business at 80 South River Road in Morrisville, Vermont.

4. The Town of Fairlee is a municipality located in Orange County, Vermont.

### JURISDICTION

5. This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332

1

1710588v.1

## STATEMENT OF THE CLAIM

### Statement of the Facts

6. This insurance coverage dispute arises out a law suit that the Town of Fairlee has recently filed in the Orange County Superior Court in Vermont seeking damages from Keymont Construction and other defendants for problems with a 275,000 gallon water storage tank that was built for the Town in 2003. A true, accurate and complete copy of the Town's Complaint is attached hereto as Exhibit A.

7. Paragon Construction, Inc. was the general contractor for this water storage tank project (hereafter "the Project"). (Complaint, Paragraph 24).

8. The original design for the water storage tank project (hereafter "WST") called for the use of cast-in-place concrete. (Complaint, Paragraph 26).

9. Pursuant to Change Order No. 1, however, the design for the roof of the WST was modified in 2003 to substitute "precast, hollow-core concrete planks (hereinafter, "the Planks") and a topping layer of reinforced concrete (hereinafter, "the Slab") that would go over the Planks." (Complaint, Paragraph 26).

10. Paragon Construction subcontracted with Keymont Construction "to provide concrete services for the WST, including constructing the roof with the Planks and the Slab." (Complaint, Paragraph 29).

11. Pursuant to this subcontract, Keymont Construction duly installed concrete that was supplied to it by Newstress, Inc.

12. The construction of the new tank was completed in 2004. (Complaint, Paragraph 56).

1710588v.1

13. The Town alleges that in 2014 it "became aware of small cracks that had developed on the exterior of the concrete roof of the WST." (Complaint, Paragraph 57).

14. An investigation conducted for the Town in 2014 allegedly concluded that the cracks did not present any "structural concern." (Complaint, Paragraph 59).

15. A subsequent underwater inspection carried out by divers in the summer of 2015 determined that sections of concrete from the underside of the Planks had fallen into the tank. (Complaint, Paragraphs 61-62).

16. The Town alleges that its further investigation during 2015 concluded that several of the planks had experienced "spalling" and that two of the planks were structurally compromised and that the other six were likely to fail in the future. (Exhibit A, Paragraph 65-69).

17. The Town alleges that these problems are due to the negligent design and manufacture of the Planks. (Exhibit A, Paragraphs 80-81).

18. The Town asserts that the roof must be completely replaced and that a temporary roof must be installed in the interim to prevent snow from accumulating and causing further damage to the WST. (Exhibit A, Paragraphs 73, 75).

19. In its lawsuit, the Town alleges that the shop drawing for this project were approved by Keymont and the other defendants despite the fact that these concrete planks were not proper for their intended use. (Exhibit A, Paragraphs 45-46)

20. The Town seeks recovery against Keymont Construction in Count 9 for its claimed negligence in ordering and installing the Planks and Slab (Exhibit A, Paragraphs 162-163)

21. Additionally, the Town alleges in Count 10 that it is entitled to damages for breach of warranty due to the failure of the WST to work as promised. (Exhibit A, Paragraphs 166-168).

1710588v.1

**The Contract of Insurance**

22.     At all relevant times, the Firemen's Insurance Company of Washington, D.C. (hereafter "Firemen's") has provided commercial general liability insurance coverage to Keymont Construction, Inc. (hereafter "Keymont") pursuant to Policy No. CPA0004832 (hereinafter "the Firemen's Policy"). A true, accurate and complete copy of the Firemen's Policy is attached hereto as Exhibit B.

23.     Pursuant to the policy's Commercial General Liability ("CGL" insurance coverage provisions, Firemen's agreed

> We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for . . . or "property damage" to which this insurance does not apply.
>
>> B.      This insurance applies to "bodily injury" and "property damage" only if:
>>
>>> (1)     The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory."
>>>
>>> (2)     The …"property damage" occurs during the policy period.

24.     The Firemen's Policy defines an "occurrence" as meaning "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

25.     The Firemen's Policy defines "property damage" as meaning:

> a.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b.      Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it…

1710588v.1

26. This grant of insurance coverage was subject to various exclusions that are enumerated in the main body of the CGL form.

27. Exclusion K states that there is no coverage for any of the following:

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

28. Exclusion L states that there is no coverage for any of the following:

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

"Your work" includes

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

29. Exclusion M states that there is no coverage for any of the following:

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of;

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance to its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

30. The policy defines "impaired property" as meaning:

"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

    b. Your fulfilling the terms of the contract or agreement.

31. The policy defines "your product" as meaning:

Your product":

    a. Means:

        (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (a) You;

            (b) Others trading under your name; or

            (c) A person or organization whose business or assets you have acquired; and

        (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b. Includes

        (1) Warranties or representations made at any time with respect to the fitness, quality,

        durability, performance or use of "your product"; and

     (2) The providing of or failure to provide warnings or instructions.

  c. Does not include vending machines or other property rented to or located for the use of others but not sold.

32. The policy defines "your work" as meaning:

"Your work":

  a. Means:

     (1) Work or operations performed by you or on your behalf; and

     (2) Materials, parts or equipment furnished in connection with such work or operations.

  b. Includes

     (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

     (2) The providing of or failure to provide warnings or instructions.

## **CLAIMS FOR DECLARATORY RELIEF**

### COUNT I
### (No "Occurrence")

33. Plaintiff, realleges and incorporates by reference the allegations contained in paragraphs 1-32 of its Complaint for Declaratory Relief as if fully set forth herein.

34. In order for the Firemen's Policy to cover property damage, the damage must result from an "occurrence."

35. The Firemen's Policy defines "occurrence" as an "accident."

7

36. The Town's allegations of faulty workmanship and breach of contract against Keymont Construction are not an "accident."

37. No coverage is available under the Firemen's Policy by reason of the fact that the damages sought from Keymont Construction in Counts 9 and 10 did not result from an accidental "occurrence" as that term is defined in the Firemen's Policy.

WHEREFORE, Plaintiff Firemen's seeks a declaration that these claims are excluded in whole or in part as not resulting from an "occurrence."

## COUNT II
### (No "Property Damage")

38. Plaintiff, realleges and incorporates by reference the allegations contained in paragraphs 1-32 of its Complaint for Declaratory Relief as if fully set forth herein.

39. In its Complaint, the Town alleges that certain portions of the WST have not yet suffered damage but must be removed and replaced due to a risk of collapse or "spalling" in the future.

40. Such claims are not for "property damage" as that term is defined in the Firemen's Policy.

WHEREFORE, Plaintiff Firemen's seeks a declaration that these claims are excluded in whole or in part as not seeking damages on account of "property damage."

## COUNT III
### (Exclusion K)

41. Plaintiff, realleges and incorporates by reference the allegations contained in paragraphs 1-32 of its Complaint for Declaratory Relief as if fully set forth herein.

42. In its Complaint, the Town of Fairlee alleges that Keymont Construction is liable for the claimed negligence of Newstress in providing defective concrete planks for the WST (Paragraph 163).

8

43. These claims are subject to Exclusion K as involving property damage to the insured's own product arising out of it or any part of it.

WHEREFORE, Plaintiff Firemen's seeks a declaration that these claims are excluded in whole or in part pursuant to Exclusion K.

### COUNT IV
### (Exclusion L)

44. Plaintiff, realleges and incorporates by reference the allegations contained in paragraphs 1 -32 of its Complaint for Declaratory Relief as if fully set forth herein.

45. In its Complaint, the Town of Fairlee seeks recovery for the cost of removing and replacing the Slabs and Planks that were installed by Keymont Construction.

46. The Town's claims are subject to Exclusion L in the Firemen's Policy as involving property damage to the insured's work.

WHEREFORE, Plaintiff Firemen's seeks a declaration that these claims are excluded in whole or in part pursuant to Exclusion L.

### COUNT V
### (Exclusion M)

47. Plaintiff, realleges and incorporates by reference the allegations contained in paragraphs 1 -32 of its Complaint for Declaratory Relief as if fully set forth herein.

48. In its Complaint, the Town of Fairlee seeks recovery for the cost of removing and replacing the Slabs and Planks that were installed by Keymont Construction, including several Planks that have not yet suffered any physical harm.

49. Such claims are subject to Exclusion M in the Firemen's Policy as involving property damage to "impaired property" as that term is defined in the Firemen's Policy.

WHEREFORE, Plaintiff Firemen's seeks a declaration that these claims are excluded in whole or in part pursuant to Exclusion M.

**WHEREFORE**, the Plaintiff, Firemen's Insurance Company of Washington, D.C., respectfully requests that this Honorable Court declare and adjudicate the rights, duties and responsibilities of the parties under the terms and provisions of insurance Policy No. CPA0004832 and issue a judicial declaration that coverage under said policy does not apply to the underlying claims, together with such further relief as the Court deems just and proper.

                                    Firemen's Insurance Company of Washington, D.C.

Dated: July 17, 2018              MORRISON MAHONEY LLP

By: _____
William A. Staar, Bar #5115
wstaar@morrisonmahoney.com
1001 Elm Street, Suite 304
Manchester, NH 03101
Phone:  603-622-3400
Fax:    603-622-3466

1710588v.1